UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

JUAN PABLO LUGO, a/k/a NALDO REYES,

      Plaintiff,

 – against –

CITY OF NEW YORK; Commissioner MARTIN F. HORN;
Chief of Department CAROLYN THOMAS; Deputy
Commissioner RICHARD R. WHITE; Captain FREEMAN
WILLIAMS, Shield # 824; Officer FRANK GAETA, Shield
# 3523; Officer URUNDI McCOY, Shield # 3190; Officer
JAMES HOUSTON, Shield # 11043; Officers JOHN/JANE
DOES #1-5,

      Defendants.

-------------------------------------------------------------------x

08 Civ. _____

**COMPLAINT AND
JURY DEMAND**

**ECF CASE**



## PRELIMINARY STATEMENT

  1.  This is a civil rights action brought by plaintiff Juan Pablo Lugo, also

known as Naldo Reyes ("Mr. Lugo" or "plaintiff"), for damages pursuant to 42 U.S.C. § 1983.

On March 2, 2007, while in the custody of the New York City Department of Correction

("DOC" or "the Department"), and confined to the North Infirmary Command ("NIC"), Mr.

Lugo was brutally beaten by staff members in violation of his rights under the Fourteenth

Amendment to the United States Constitution. Among the serious injuries that Mr. Lugo

suffered as a result of this March 2, 2007 beating were a right orbital fracture, contusion to the

left forehead, and multiple cuts and bruises to his face and body. As a result of this illegal and

unjustified assault, Mr. Lugo has suffered, and continues to suffer, serious injury to the eye. Mr.

Lugo now seeks redress against the DOC employees who beat him, their supervisors, and the

City of New York.

## JURISDICTION AND VENUE

2.     This action arises under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

4.     The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

5.     Mr. Lugo demands trial by jury in this action.

## PARTIES

6.     Juan Pablo Lugo, also known as Naldo Reyes, is a citizen of the United States and is currently incarcerated at the Orleans Correctional Facility in Albion, New York.  At the time these events occurred, Mr. Lugo was detained awaiting trial at the North Infirmary Command on Rikers Island, Bronx County.

7.     Defendant City of New York ("City") is a municipal corporation which, through its Department of Correction operates a number of detention facilities.  The Department, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders.  In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy.  These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or

customs.  The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

       8.    At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law.  On information and belief, Defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.  As Commissioner, defendant Horn is also responsible for the care, custody, and control of all inmates housed in the Department's jails.  As Commissioner, Horn was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails.  In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York.  Defendant Horn is sued in his individual capacity.

       9.    At all times relevant hereto, Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law.  As Chief of Department, she was the highest ranking uniformed member of the department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails.  She was also responsible for the care, custody, and control of all inmates in the Department jails.  As Chief of Department, Thomas is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails.

Defendant Thomas is sued in her individual capacity.

10.    At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division.  As Deputy Commissioner, his responsibilities included supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force.  Defendant White was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails.  Defendant White is sued in his individual capacity.

11.    At all times relevant hereto, Defendant Freeman Williams, Shield # 824, was a captain within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Williams worked at NIC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Lugo. Defendant Williams is sued in his individual capacity.

12.    At all times relevant hereto, Defendant Frank Gaeta, Shield # 3523, was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Gaeta worked at NIC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Lugo. Defendant Gaeta is sued in his individual capacity.

13.    At all times relevant hereto, Defendant Urundi McCoy, Shield # 3190, was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of

4

defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant McCoy worked at NIC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Lugo. Defendant McCoy is sued in his individual capacity.

14.     At all times relevant hereto, Defendant James Houston, Shield # 11043, was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Houston worked at NIC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Lugo. Defendant Houston is sued in his individual capacity.

15.     At all times relevant hereto, Correction Officers John/Jane Does # 1-5 (collectively referred to herein as the "Doe Defendants"), whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and "Jane Doe," were officers of DOC, acting in the capacity of agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law. On information and belief, Defendants John/Jane Does # 1-5 worked at NIC on March 2, 2007 and participated or witnessed and failed to intervene in the assault on Mr. Lugo that took place on March 2, 2007. Defendants John/Jane Does # 1-5 are sued in their individual capacities.

16.     John/Jane Does # 1-5, as well as defendants Horn, Thomas, White, Williams, Gaeta, McCoy, and Houston are collectively referred to as the "Individual Defendants."

5

## STATEMENT OF FACTS

**New York City's Jails:  A History of Abuse**

17.    For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]  In many instances, DOC staff brutally beat prisoners to punish them for having "disrespected" staff, or because they believe they were "disrespected" by the prisoner.  That is what happened to the plaintiff in this case.

18.    For example, *Sheppard v. Phoenix*, 210 F. Supp.2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU).  That litigation unearthed abuse of prisoners and its cover-up sufficiently serious to merit criminal prosecutions of DOC staff members.

19.    *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the widespread practice of using excessive force against inmates incarcerated in New York City's jails.  This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails.  The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the Department's use of force policy.

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) (Correction Institution for Men); *Jackson v. Montemagno*, 85 Civ. 2384 (AS) (E.D.N.Y.) (Brooklyn House of Detention); *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) (Bellevue Prison Psychiatric Ward); *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) (Central Punitive Segregation Unit).

20.     Through DOC's elaborate reporting system, the Supervisory Defendants – Horn, Thomas and White – were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force resulting in serious injuries to inmates and have failed to take sufficient steps to curb these abuses.

21.     The Department and the Supervisory Defendants have also been made aware of the failure of the Department to bring disciplinary charges against its officers to promote institutional reform, punish staff who misuse force, and discourage others from doing so.

22.     Through all these cases and Department reports, the supervisory defendants have been made aware of the widespread practice by DOC staff of using excessive and/or unnecessary force to injure, and not restrain, inmates.  They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct, a practice that causes further abuse.  These Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

**The Incident on March 2, 2007**

23.     On or about March 2, 2007, at approximately 9:30 p.m., Mr. Lugo was watching television in the dayroom of his housing area at NIC.

24.     Defendant Captain Williams instructed Mr. Lugo to fix his bed.  Mr. Lugo responded that he would do so momentarily, which he believed Defendant Captain Williams accepted as a suitable answer.  Mr. Lugo's primary language is Spanish, and his comprehension

of English is limited.

      25.     Several minutes later, Defendant Captain Williams handcuffed Mr. Lugo and escorted him out of the housing unit and into the intake area of the jail, which is isolated and removed from the view of other prisoners.

      26.     In the intake area, Defendant Captain Williams asked Mr. Lugo several times if Mr. Lugo understood what Defendant Captain Williams was saying to him, to which Mr. Lugo replied that he had not comprehended what he had been told.

      27.     Then, without any justification or provocation, Defendant Captain Williams, who was wearing gloves, punched Mr. Lugo, whose hands were still cuffed, in the face, striking him in his right eye.  This initial blow, inflicted by Defendant Captain Williams, was delivered with substantial and unjustified force.

      28.     Defendant Officers Gaeta, McCoy, and/or Houston then threw Mr. Lugo against the radiator and onto the floor.

      29.     While Mr. Lugo was lying on the floor, Defendant Officers Gaeta, McCoy, and Houston and Defendant Captain Williams repeatedly punched and kicked Mr. Lugo in the face and body.

      30.     Upon information and belief, the Doe Defendants were standing nearby witnessing this assault and did nothing to stop the attack.

      31.     During the assault, Mr. Lugo was not resisting.

      32.     Defendant Officers Gaeta, McCoy, Houston, and/or Defendant Captain Williams then dragged Mr. Lugo to a cell and left him there.

      33.     At no time prior to or during this assault did Mr. Lugo make any aggressive gesture toward any officer or supervisor or present any risk of harm to any officer or

supervisor.

34.     Defendants Williams, Gaeta, McCoy, Houston, and the Doe Defendants failed to intervene to prevent the assault on, or prevent further injury to, Mr. Lugo.

35.     By failing to intervene in order to stop this assault, Defendants Williams, Gaeta, McCoy, Houston, and the Doe Defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Lugo.

36.     Mr. Lugo was left on the cell floor for about two hours.

37.     Eventually, Mr. Lugo was taken to the facility medical center where it was determined that he needed emergency medical health care, and he was sent to Elmhurst Hospital Center.

38.     As a result of this assault, Mr. Lugo suffered serious physical and emotional injuries, including a right orbital fracture, contusion to the left forehead, and bruises, cuts and pain to his face and body.

39.     Mr. Lugo continues to suffer physical and emotional injuries, including serious injury to the eye, as a result of this assault.

40.     At no time did Mr. Lugo assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows.

41.     Mr. Lugo did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used.

42.     The Individual Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Lugo's rights and physical well-being

43.     Mr. Lugo timely filed a written notice of claim with the Comptroller's

9

Office at 1 Centre Street, New York, New York.

44.    More than 30 days have passed since the filing of the notice of claim, and the City has not settled the action.

45.    This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against All Individual Defendants)

46.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

47.    By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, or failing to prevent other Individual Defendants from doing so, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment of the United States Constitution to be free from gratuitous and excessive force.

48.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees.  Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.  These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution.

49.    Defendants Horn, Thomas and White knew and/or know that the pattern of

10

physical abuse described above existed in the City jails prior to and including the time of the

assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes an

acquiescence in the known unlawful behavior of their subordinates. The prevalence of these

practices and general knowledge of their existence at the time of plaintiff's beating, and the

failure of these defendants to take remedial action despite the fact that the misuse of force in City

jails had been persistently brought to their attention, constitutes deliberate indifference to the

rights and safety of the inmates in their care and custody, including the inmate named as a

plaintiff in this action. These defendants' conduct has been a substantial factor in the

continuation of such violence and a proximate cause of the constitutional violations alleged in

this complaint.

50.    As a direct and proximate result of the misconduct and abuse of authority

detailed above, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against Defendant City)

51.    Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

52.    Defendant City, through DOC, and acting under the pretense and color of

law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff

brutality and retaliation by DOC staff at the time of plaintiff's beating. This widespread

tolerance of correction officer abuse of prisoners constituted a municipal policy, practice or

custom and led to the assault of the plaintiff.

53.    By permitting, tolerating and sanctioning a persistent and widespread

11

policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating,

defendant City has deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed

to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to,

rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive

force and retaliation.

      54.    As a direct and proximate result of the policy, practice and custom

detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### Negligent hiring/training/retention of
### Employment Services
### (Against Defendant City)

      55.    Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

      56.    Defendant City, through the DOC, owed a duty of care to plaintiff to

prevent the conduct alleged, because under the same or similar circumstances a reasonable,

prudent and careful person should have anticipated that injury to plaintiff or to those in a like

situation would probably result from the foregoing conduct.

      57.    Upon information and belief, all of the Individual Defendants were unfit

and incompetent for their positions.

      58.    Upon information and belief, defendant City knew or should have known

through the exercise of reasonable diligence that the Individual Defendants were potentially

dangerous.

      59.    Upon information and belief, defendant City's negligence in screening,

hiring, training, disciplining, and retaining these defendants proximately caused each of

plaintiff's injuries.

60.     As a direct and proximate result of this unlawful conduct, plaintiff

sustained the damages hereinbefore alleged.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### Assault and Battery
### (Against All Defendants)

59. Plaintiff repeats and realleges each of the foregoing paragraphs as if they were

fully set forth at length herein.

60. In assaulting, battering, and threatening Plaintiff, or standing by and failing to

intervene when plaintiff was assaulted, the individual Defendants, acting in their capacities as

DOC officers, and within the scope of their employment, each committed a willful, unlawful,

unwarranted, and intentional assault and battery upon Plaintiff.

61. The assault and battery by these Defendants was unnecessary and

unwarranted in the performance of their duties as DOC officers and constituted an unreasonable

and excessive use of force.

62. Defendants, their officers, agents, servants, and employees were responsible

for Plaintiff's assault and battery. Defendant City, as employer of each of the Defendants, is

responsible for their wrongdoing under the doctrine of *respondeat superior*.

63. As a direct and proximate result of the misconduct and abuse of authority

detailed above, Plaintiff sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants:

1.    Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Mr. Lugo as a result of the events alleged herein.

2.    Punitive damages against the Individual Defendants in an amount to be determined at trial.

3.    An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

4.    Such other further relief as the Court may deem appropriate.

Dated: March 20, 2008
        New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

Jonathan S. Abady (JA 5147)
Elora Mukherjee (EM 4011)
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan (JC 9018)
Mary Lynne Werlwas (MLW 6403)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530
*Counsel for Plaintiff*